***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Pfeiffer.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to mis-joinder or non-joinder of parties.
3. An employee-employer relationship existed between Jimmy F. Patrick and Ansell Golden Needles.
4. The parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
5. Insurance coverage is provided by Zurich American Insurance, as managed by Risk Enterprise Management.
6. Jimmy F. Patrick sustained a compensable injury on August 25, 2000.
7. A Form 63, Notice to Employee of Payment of Compensation, was completed on September 12, 2000.
8. An Amended Form 63 was completed September 29, 2000.
9. A Form 28T, Notice of Termination of Compensation by Reason of Trial Return to Work, was completed on September 20, 2000.
10. A Form 18, Notice of Accident and Claim of Employee, was completed by Jimmy F. Patrick on September 20, 2000, and filed on September 29, 2000.
11. A Form 22 was completed on December 5, 2000.
12. Jimmy F. Patrick filed a Motion for Medical Treatment dated December 19, 2000.
13. Another Amended Form 63 was completed December 21, 2000.
14. A Form 28T, Notice of Termination of Compensation by Reason of Trial Return to Work was completed on December 27, 2000.
15. An Order was filed on January 9, 2001, allowing Jimmy F. Patrick to be evaluated by Dr. T. Craig Derian.
16. Jimmy F. Patrick filed a Motion for Change of Treatment Physician dated February 2, 2001; Defendants filed a Response to the Motion dated February 16, 2001; an Order was filed February 26, 2001 allowing Jimmy F. Patrick to change treating physicians.
17. A Form 33, Request that Claim be Assigned for Hearing, was filed by Jimmy F. Patrick on March 8, 2001.
18. Defendants filed a Form 33, Request that Claim be Assigned for Hearing, dated March 6, 2001.
19. Defendants filed a Form 33R, Response to Request that Claim be Assigned for Hearing, dated April 19, 2001.
20. The case was assigned for mediation and mediation was held on June 6, 2001, without agreement in the case.
21. The parties entered into a Workers' Compensation Compromise Settlement Agreement dated September 10, 2001; the Order Disapproving Compromise Settlement Agreement was filed by Chrystal Redding Stanback on October 4, 2001.
22. A Form 22 wage chart was submitted on January 10, 2002 and was received into evidence.
23. The Pre-Trial Agreement dated December 26, 2001which was submitted by the parties is incorporated by reference.
24. The parties stipulated into evidence the following:
1. Packet of medical records consisting of three hundred fifty-three pages.
2. Eighty-six pages of additional exhibits.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Jimmy F. Patrick, who was thirty-nine years old at the time of hearing before the Deputy Commissioner, began working for defendant in 1986, but left in 1991. He was subsequently rehired in approximately 1992 and continued working for the company until the date of the injury giving rise to this claim. Jimmy F. Patrick's job as utility operator involved getting yarn out of a box, placing the yarn into a buggy, taking the buggy to his machines, and then placing the yarn onto the machines as necessary. His average weekly wage as of August 25, 2000, was $265.69.
2. On August 25, 2000, Jimmy F. Patrick sustained a compensable injury by accident when he lifted a box of yarn weighing approximately one hundred ninety pounds and experienced an immediate onset of low back and leg pain. Defendant-employer sent Jimmy F. Patrick to Dr. Bond, a general surgeon, and was seen that day by Mr. Hughes, a physician's assistant at Dr. Bond's office. Jimmy F. Patrick advised Mr. Hughes that he had back surgery in 1996 by Dr. Kelly, a neurosurgeon at Baptist Hospital, but that he had been doing well prior to the incident that day. The physician's assistant took Jimmy F. Patrick out of work and prescribed medication.
3. On August 29, 2000, Dr. Bond subsequently examined Jimmy F. Patrick and ordered an MRI. The test was performed September 8, 2000, and was interpreted by the radiologist as showing degenerative and post-surgical changes with disc herniations at L3-4 and L4-5. When Dr. Bond next saw Jimmy F. Patrick on September 12, 2000, Jimmy F. Patrick's symptoms had improved some. Dr. Bond released Jimmy F. Patrick to return to part-time work. Jimmy F. Patrick returned to Dr. Bond's office two days later and stated that he developed severe pain upon returning to work. Jimmy F. Patrick had extreme muscle spasms in his low back on examination that day; however, the physician's assistant kept Jimmy F. Patrick out of work for only the remainder of that day.
3. Dr. Bond saw Jimmy F. Patrick again on September 18, 2000, after conferring with Dr. Kelly regarding Jimmy F. Patrick's MRI. Dr. Bond advised Jimmy F. Patrick that Dr. Kelly had not seen a surgically correctable lesion on the MRI. Dr. Bond sent Jimmy F. Patrick back to work for two to four hours per day. Jimmy F. Patrick did return to work and experienced increased pain, so Dr. Bond put him on bed rest on September 25, 2000. Dr. Bond then sent Jimmy F. Patrick to Dr. Kelly, who examined him on November 2, 2000. Dr. Kelly gave Jimmy F. Patrick a book on back care and recommended that he lose weight, since he weighed over three hundred pounds, but no surgery was recommended.
4. Jimmy F. Patrick returned to Dr. Bond on December 4, 2000. Dr. Bond tried to "motivate" Jimmy F. Patrick to loose weight, sent him to physical therapy, and prescribed Prozac since it appeared that anxiety was a factor in his perceived pain. At the next office visit, Dr. Bond released Jimmy F. Patrick to return to work at four hours per day with restrictions. Jimmy F. Patrick then returned to the doctor on December 18, 2000, complaining of severe back and leg pain that had been aggravated by his return to work. By that time, Dr. Bond, who thought that Jimmy F. Patrick was not dealing with his pain as well as he could, was frustrated with Jimmy F. Patrick and thought that he was trying to control the situation. Jimmy F. Patrick was frustrated with Dr. Bond for sending him back to work too soon and ignoring the increased symptoms caused by his work activities and the thirty minute commute to work. Dr. Bond insisted that Jimmy F. Patrick could work at least two hours per day. Jimmy F. Patrick reported for work, but spent most of the two hours lying on a sofa in the reception area and proceeded to miss entire days of work due to pain.
5. During that time, defendants, who had admitted liability for benefits under the Workers' Compensation Act pursuant to a Form 63 filed with the Industrial Commission, were not paying compensation for temporary partial disability. Rather, defendant was apparently paying Jimmy F. Patrick his full salary despite the fact that Jimmy F. Patrick purportedly worked only two hours of each work day. Since Jimmy F. Patrick had been released to return to work by Dr. Bond and because he was missing time due to back pain, defendant terminated Jimmy F. Patrick's employment effective January 11, 2001, for having exceeded the maximum number of absences under the company attendance policy. Defendants did not pay Jimmy F. Patrick any compensation after that date even though he had only been working two hours per day. They did not file a Form 24 with the Industrial Commission or receive permission to stop payment of compensation.
6. Jimmy F. Patrick's attorney then made arrangements for him to be seen by Dr. Derian, an orthopedic spine surgeon. Dr. Derian examined Jimmy F. Patrick on January 25, 2001, and reviewed his MRI. It was Dr. Derian's opinion that Jimmy F. Patrick had reruptured the disc at the L3-4 interspace, the L4-5 disc was bulging, and there was stenosis of the lateral recesses at both levels. Jimmy F. Patrick's leg pain was worse than his back pain at that time. Dr. Derian recommended surgery to decompress the two levels to see if that would be sufficient to give Jimmy F. Patrick relief of his symptoms. Dr. Derian recommended that if such surgery inadequately addressed Jimmy F. Patrick's symptoms, Jimmy F. Patrick subsequently would undergo a fusion.
7. Defendants refused to authorize the surgery recommended and, except for visits to the emergency room, Jimmy F. Patrick received no known treatment for his back problems after that date. Jimmy F. Patrick requested a hearing regarding his medical treatment. After the hearing, he was reexamined by Dr. Derian and Dr. Kelly who each continued to make the same recommendations for and against surgery. Dr. Derian recommended that the fusion surgery be performed at that time in light of the lapse of time between the injury and the additional collapse of the disc spaces shown on Jimmy F. Patrick's latest MRI.
8. Since there were two opposing medical opinions regarding the issue of surgery, arrangements were made through the Nurses Section of the Industrial Commission for Jimmy F. Patrick to obtain a third opinion. Jimmy F. Patrick was seen by Dr. Chewning, another orthopedic spine surgeon, on September 4, 2002. Jimmy F. Patrick's ankle jerk reflexes were absent on that examination and his MRI showed virtual complete loss of the disc space at L4-5 with what appeared to be edema in that area. Dr. Chewning concluded that Jimmy F. Patrick had mechanical dysfunction of the L3-4 and L4-5 segments, which could be stabilized with surgery to decompress and fuse those levels using instrumentation. Apparently, Jimmy F. Patrick was persuaded by the doctor to have surgery and the procedure was scheduled for December 10, 2002, under the sponsorship of the Division of Vocational Rehabilitation. However, it is not known whether Jimmy F. Patrick actually underwent the procedure on that date.
9. Dr. Kelly's opinions in this case were not as persuasive as those of Dr. Derian and Dr. Chewning when viewed in light of the evidence of record. In fact, Jimmy F. Patrick did have anatomical reasons for the back and leg pain that he experienced. Jimmy F. Patrick's injury on August 25, 2000, had materially aggravated his preexisting degenerative and postoperative back condition thereby causing Jimmy F. Patrick to become symptomatic. The fact that Dr. Bond pushed Jimmy F. Patrick too hard and too soon probably did not help matters, especially considering Jimmy F. Patrick's preexisting problems with anxiety and depression. However, there were psychological issues playing a role in Jimmy F. Patrick's perceived level of pain and Dr. Bond appeared to be correct in assessing that Jimmy F. Patrick was not dealing with it as well as most people would have. In any event, the Full Commission finds that the problems did not appear to be volitional on Jimmy F. Patrick's part and were due to issues present before the injury.
10. As of January 8, 2001, when Jimmy F. Patrick last worked for defendant, he was unable to work in any capacity and he remained so disabled until the date of hearing before the Deputy Commissioner.
11. As of the date of hearing before the Deputy Commissioner on January 7, 2002, Jimmy F. Patrick required surgery in the nature of a decompression and fusion of L3-4 and L4-5. Such surgery would tend to effect a cure, give relief, and lessen Jimmy F. Patrick's disability associated with the injury by accident giving rise to this claim. Because defendants failed to provide Jimmy F. Patrick with any treatment since January 2001, Jimmy F. Patrick should have been permitted to choose between Dr. Derian and Dr. Chewning for the performance of the operation.
12. At the time of hearing before the Deputy Commissioner, Jimmy F. Patrick had not reached maximum medical improvement with respect to his August 25, 2000, injury at work.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Defendants improperly terminated payment of compensation to Jimmy F. Patrick when he returned to work in a position involving only two hours of purported work per day. Jimmy F. Patrick was entitled to continuing compensation for temporary partial disability and the payment of his full wages by defendant at that time. Consequently, defendant should have complied with N.C. Gen. Stat. § 97-18.1, and obtained permission from the Industrial Commission before terminating compensation. N.C. Gen. Stat. §§ 97-18.1 and 97-28.
2. Plaintiff is entitled to compensation for temporary total disability at the rate of $177.13 per week from January 9, 2001, through the date of hearing before the Deputy Commissioner on January 7, 2002, and continuing until Jimmy F. Patrick's date of death. N.C. Gen. Stat. § 97-29.
3. Because defendants terminated payment of compensation to Jimmy F. Patrick without the approval of the Industrial Commission, the compensation due after January 8, 2001, was not paid on a timely basis and plaintiff is entitled to have a ten percent (10%) penalty assessed against defendants for late payment. N.C. Gen. Stat. §§ 97-18(g) and97-18.1.
4. Plaintiff is entitled to have defendants pay to him the difference between the compensation previously paid to Jimmy F. Patrick at the rate of $175.23 per week and the correct compensation rate of $177.13 per week for the periods prior to January 9, 2001. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendants provide all medical compensation for the care of Jimmy F. Patrick that arose from his injury by accident, including the surgery recommended by Dr. Derian and Dr. Chewning, if such surgery was performed. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for Jimmy F. Patrick's temporary total disability at the rate of $177.13 per week from January 9, 2001, through January 7, 2002, and continuing through the date of his death. The portion of such compensation that has accrued shall be paid to plaintiff in a lump sum. This award is subject to the attorney's fee hereinafter approved.
2. Defendants shall also pay a ten percent (10%) penalty against the compensation awarded for temporary total disability to the extent that such compensation was not paid within the time allowed by N.C. Gen. Stat. § 97-18. All compensation due more than forty days before payment is made is subject to this penalty. The penalty is subject to the attorney's fee hereinafter approved.
3. Defendants shall also pay to plaintiff the difference between the compensation previously paid to Jimmy F. Patrick at the rate of $175.23 per week and the correct compensation rate of $177.13 per week for the periods prior to January 9, 2001. Such compensation has accrued and shall be paid to plaintiff in a lump sum subject to the attorney's fee hereafter approved.
4. Defendants shall pay all medical expenses incurred by Jimmy F. Patrick as a result of his injury by accident, including the expenses associated with the surgery recommended by Dr. Derian and Dr. Chewning, if such surgery was performed. If Jimmy F. Patrick underwent the surgery as scheduled prior to the publication of the Opinion and Award, defendants shall pay the medical expenses directly to the providers, who will then be responsible for reimbursing the Division of Vocational Rehabilitation.
5. Defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation and penalty awarded herein. Defendants shall pay plaintiff's counsel a lump sum from the accrued benefits and shall thereafter pay to counsel every fourth check.
6. Defendants shall pay the costs.
This 22nd day of October 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER